UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ASHRAF AL SAFOO,<br> a/k/a Abu Al'-Abbas Al-Iraqi,<br> a/k/a Abu Shanab,<br> a/k/a Abbusi | No.    18 CR 696<br><br>Hon. John Robert Blakey |

## MOTION OF THE UNITED STATES TO ADMIT EVIDENCE PURSUANT TO FED. R. EVID. 801(d)(2)(E)

The UNITED STATES OF AMERICA, by JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, moves this Court to admit certain statements against defendant ASHRAF AL SAFOO pursuant to Fed. R. Evid. 104(a), 801(d)(2)(E) and *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978).

## I.    INTRODUCTION

This submission begins by providing an overview of the charged conspiracies in this case, namely, the conspiracy to provide material support to a foreign terrorist organization, the conspiracy to send threats in interstate commerce and the conspiracy to commit computer fraud. It then discusses the law governing the admissibility of coconspirator statements under Rule 801(d)(2)(e). Next, it discusses the law governing alternative bases for admissibility of certain statements, as many of the statements proffered here are admissible under Rule 801(d)(2)(A) or are offered for non-hearsay purposes. The submission then outlines some of the evidence establishing the conspiracies in this case. Finally, it summarizes the evidence supporting the admission of coconspirators' statements. Based on the following, the

government seeks admission of statements pursuant to Rule 801(d)(2)(E) and requests a pretrial ruling of admissibility from the Court, in accord with *United States v. Santiago*, 582 F.2d 1128, 1130–31 (7th Cir. 1978), and established practice in this Circuit. *See United States v. Alviar*, 573 F.3d 526, 540 (7th Cir. 2009); *United States v. Harris,* 585 F.3d 394, 398, 400 (7th Cir. 2009).

In this submission, the government has not detailed each and every proposed coconspirator statement, but instead has included a representative sample of statements from the relevant documents. Further, by presenting statements attributed to particular witnesses, the government is not committed to introducing each statement at trial. Of course, the government is committed to establishing the *Bourjaily v. United States*, 483 U.S. 171, 176–81 (1987) predicates at trial, and the ultimate admissibility of coconspirator statements is government by the trial evidence.

## II.    OVERVIEW OF THE CHARGED CONSPIRACIES

On March 12, 2020, defendant Ashraf al-Safoo was charged by a second superseding indictment with: conspiracy to provide material support to a foreign terrorist organization, in violation of Title 18, United States Code, Section 2339B (Count One); conspiracy to transmit threats in interstate commerce, in violation of Title 18, United States Code, Section 371 (Count Two); conspiracy to intentionally access a protected computer without authorization, in violation of Title 18, United States Code, Section 371 (Count Three); multiple counts of intentionally accessing a

2

protected computer without authorization, in violation of Title 18, United States Code, Section 1030 (Counts Four, Six, Eight and Ten); and multiple counts of providing material support to a foreign terrorist organization, in violation of Title 18, United States Code, Section 2339B (Counts Five, Seven, Nine, Eleven and Twelve).

## A. THE CONSPIRACY TO PROVIDE MATERIAL SUPPORT TO ISIS

As detailed in the complaint and indictment, and as the evidence will prove at trial, beginning in approximately June 2017, the defendant conspired with other members of the Khattab Media Foundation (Khattab), an internet-based pro-ISIS organization to provide material support in the form of services to ISIS.

Khattab was dedicated to the creation and widespread dissemination of material supporting ISIS's mission, including infographics, edited video content, and articles and essays. Khattab's infographics, videos and other contentwere translated into multiple languages. Some of the videos and infographics created and posted by Khattab contained threats, to include, for example, a video directed towards the United States, called "Our Gifts are Ready" and an infographic of a person depicted as Santa holding his own decapitated head. Khattab posted its infographics and videos across multiple social media platformsincluding Twitter, Facebook, and YouTube. Because the propaganda created and distributed by Khattab included messages that promoted violence, Khattab members frequently had their social media accounts

3

suspended or deleted for violating the Terms of Service of those platforms. To circumvent these policies and practices, defendant and other Khattab members sought and gained unauthorized access to social media accounts by exploiting a loophole that allowed Khattab members to re-register email accounts and use those email accounts to access existing social media accounts that they did not own or have permission to access.

Khattab had several administrators and leaders, including the defendant. They and the other Khattab members, primarily via communications on Telegram, agreed to work in coordination with ISIS and ISIS's media office to create and disseminate ISIS propaganda consistent with ISIS's declaration promoting the "jihadi media." The defendant's handles in the Khattab rooms were "Abu Al'-Abbas Al-Iraqi," "Abu Shanab" and "Abussi."

Khattab members also sought to conceal their activities in support of ISIS and these concealment methods were discussed on Telegram.

### B. THE CONSPIRACY TO TRANSMIT THREATS IN INTERSTATE COMMERCE

Beginning in June 2017 and continuing until at least approximately October 13, 2018, the defendant and others conspired to send threats in interstate commerce. More specifically, members of Khattab created or caused to be created videos and infographics that contained threats to injure others. These videos and infographics

specifically targeted ISIS's enemies, including citizen of the United States, the United Kingdom, France, Australia, Russia and Iraq.

The creation, editing, and dissemination of this information was organized in Khattab-related channels on Telegram, where Khattab members discussed Khattab's ongoing projects including the threatening infographics and videos. The threatening communications themselves were distributed in a variety of places online, including other social media platforms and websites.

As with the conspiracy to provide material support contained in Count One, the coconspirators sought to conceal their activities and these concealment methods were discussed on Telegram.

### C. THE COMPUTER FRAUD CONSPIRACY

Members of Khattab, including defendant, sought to disseminate information on behalf of ISIS on Twitter. They were aware that Twitter and other social media platforms frequently closed or suspended accounts that disseminated information that promoted violence or terrorism. In order to circumvent these practices, Khattab members shared information related to hacking into Twitter accounts using existing Hotmail.com email addresses. By gaining unauthorized access to "legitimate" Twitter accounts, the coconspirators believed that the suspension or closure of the accounts would be delayed.

As with the conspiracy to provide material support contained in Count One, the coconspirators sought to conceal their activities and these concealment methods were discussed on Telegram.

## III.  GOVERNING LAW

Rule 801(d)(2)(E) provides that a "statement" is not hearsay if it "is offered against a party" and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Admission of such coconspirator statements against a defendant is proper where the government establishes by a preponderance of the evidence that: (1) a conspiracy existed; (2) defendant and the declarant were members of the conspiracy; and (3) the statements were made during the course and in furtherance of the conspiracy. *United States v. Cruz-Rea*, 626 F.3d 929, 937 (7th Cir. 2010).[1] Statements are admissible as non-hearsay under Rule 801(d)(2)(E) notwithstanding the lack of any formal conspiracy charge, as long as the requirements of the rule are met. *See, e.g., United States v. Rea*, 621 F.3d 595, 604 (7th Cir. 2010); *United States v. Moon*, 512 F.3d 359, 363 (7th Cir. 2008).

---

[1] No Sixth Amendment confrontation issues are posed by the use of a non-testifying coconspirator's statements, offered for their truth against a defendant. Such statements are not testimonial, and therefore are not subject to the Confrontation Clause. *United States v. Nicksion*, 628 F.3d 368, 374 (7th Cir. 2010) (citing *Davis v. Washington*, 547 U.S. 813, 823–24 (2006) and *Crawford v. Washington*, 541 U.S. 36 (2004)); *see also United States v. Hargrove*, 508 F.3d 445, 448–49 (7th Cir. 2007) (coconspirator statements are neither hearsay nor testimonial).

### A.    Existence of and Membership in the Conspiracy

Under *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), the trial judge must preliminarily determine whether statements by a coconspirator of the defendant will be admissible at trial under Federal Rule of Evidence 801(d)(2)(E). In making this determination the judge must decide "if it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy . . . ." *Id.* at 1143 (quoting *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir. 1977)); *see also United States v. Hoover*, 246 F.3d 1054, 1060 (7th Cir. 2001). If the Court determines the statements are admissible, the jury may consider them for any purpose. *United States v. Thompson*, 944 F.2d 1331, 1345 (7th Cir. 1991).

Under *Santiago*, the government must make a preliminary offer of evidence to show: (1) a conspiracy existed; (2) the defendant and declarant were members of the conspiracy; and (3) the statements sought to be admitted were made during and in furtherance of the conspiracy. *Santiago*, 582 F.2d at 1134–35; *see also, e.g., United States v. Alviar*, 573 F.3d 526, 540 (7th Cir. 2009). According to *Bourjaily v. United States*, 483 U.S. 171, 176–81 (1987), the court can consider the statements in question (the statements to be admitted) to determine whether the three *Santiago* criteria have been met.

Seventh Circuit cases construing *Bourjaily* have held that properly admitted hearsay, including statements admitted under the coconspirator exception to the

7

hearsay rule (Fed. R. Evid.801(d)(2)(E)), may be used to prove what another person did or said that may demonstrate their membership in the conspiracy. *United States v. Loscalzo*, 18 F.3d 374, 383 (7th Cir. 1994) ("[W]hile only the defendant's acts or statements could be used to prove that defendant's membership in a conspiracy, evidence of that defendant's acts or statements may be provided by the statements of co-conspirators."); *United States v. Martinez de Ortiz*, 907 F.2d 629, 633 (7th Cir. 1990) (en banc).

While the Court may consider the proffered statements themselves as evidence of both the existence of a conspiracy and a defendant's participation in it, *United States v. Bourjaily*, 483 U.S. 171, 178, 180 (1987); *United States v. Harris*, 585 F.3d 394, 398–99 (7th Cir. 2009), the contents of the proffered statements alone are not sufficient to establish the existence of a conspiracy and a defendant's participation. There must also be some supporting evidence or facts corroborating the existence of the conspiracy and defendant's participation. *Harris*, 585 F.3d at 398–99. The evidence showing the existence of a conspiracy and a defendant's membership in it may be either direct or circumstantial. *See United States v. Johnson,* 592 F.3d 749, 754–55 (7th Cir. 2010); *United States v. Irorere*, 228 F.3d 816, 823 (7th Cir. 2000).

There is no requirement, for admissibility under Rule 801(d)(2)(E), that the government establish all elements of "conspiracy" such as a meeting of the minds and an overt act. *United States v. Coe*, 718 F.2d 830, 835 (7th Cir. 1983); *United States v.*

8

*Gil*, 604 F.2d 546, 548–50 (7th Cir. 1979). The government need only establish the existence of a conspiracy for an illegal purpose (or for a legal purpose using illegal means) and participation in the conspiracy by the defendant and the maker of the statement at issue (as well as that the statement was in furtherance of the venture). "[I]t makes no difference whether the declarant or any other 'partner in crime' could actually be tried, convicted and punished for the crime of conspiracy." *Gil*, 604 F.2d at 549–50; *see also Coe*, 718 F.2d at 835.

While there is thus a distinction between conspiracy law and admissibility under Rule 801(d)(2)(E), certain principles of general conspiracy law are relevant to the Rule 801(d)(2)(E) inquiries. For instance, "[a] conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense." *Salinas v. United States*, 522 U.S. 52, 63 (1997); *see also United States v. Longstreet,* 567 F.3d 911, 919 (7th Cir. 2009); *United States v. Jones*, 275 F.3d 648, 652 (7th Cir. 2001). The government need not prove that a defendant knew each and every detail of the conspiracy or played more than a minor role in the conspiracy. *United States v. Curtis*, 324 F.3d 501, 506 (7th Cir. 2003). Further, a defendant joins a criminal conspiracy if he agrees with another person to one or more of the common objectives of the conspiracy; it is immaterial whether the defendant knows, has met, or has agreed with every coconspirator or schemer. *Longstreet,* 567 F.3d at 919; *United States v. Jones*, 275 F.3d 648, 652 (7th Cir. 2001).

A defendant (or other declarant) may be found to have participated in a conspiracy even if he joined or terminated his relationship with other conspirators at different times than another defendant or coconspirator. *United States v. Noble*, 754 F.2d 1324, 1329 (7th Cir. 1985); *see also United States v. Handlin*, 366 F.3d 584, 590 (7th Cir. 2004) ("it is irrelevant when the defendant joined the conspiracy so long as he joined it at some point"). Under Rule 801(d)(2)(E), a coconspirator's statement is admissible against conspirators who join the conspiracy after the statement is made. *United States v. Sophie*, 900 F.2d 1064, 1074 (7th Cir. 1990). A conspirator who has become inactive or less active in the conspiracy nevertheless is liable for his conspirators' further statements unless he openly disavows the conspiracy or reports it to the police. *See United States v. Feldman*, 825 F.2d 124, 129 (7th Cir. 1987).

The government is not required to prove the identity of the declarant; nor must the declarant's identity be confirmed in the statement itself. *See United States v. Bolivar*, 532 F.3d 599, 604–05 (7th Cir. 2008). Rather, the government need only prove (from the statement, the context, or other evidence) that the declarant was in fact a coconspirator. *Id.*

### B.      The "In Furtherance of" Requirement

In determining whether a statement was made "in furtherance" of the conspiracy, courts evaluate the statement in the context in which it was made and look for a reasonable basis upon which to conclude that the statement furthered the conspiracy. *See Cruz-Rea,* 626 F.3d at 937; *United States v. Johnson,* 200 F.3d 529,

533 (7th Cir. 2000). Under the reasonable basis standard, a statement may be susceptible to alternative interpretations and still be "in furtherance" of the conspiracy. *Cruz-Rea*, 626 F.3d at 937–38. The "coconspirator's statement need not have been made exclusively, or even primarily, to further the conspiracy" in order to be admissible under the coconspirator exception. *Id.* at 937 (quotations and citations omitted). That statements were made to a government cooperating witness or undercover agent does not bar admission of statements otherwise "in furtherance" of the conspiracy. *United States v. Mahkimetas*, 991 F.2d 379, 383 (7th Cir. 1993); *see also United States v. Ayala,* 601 F.3d 256, 268 (4th Cir. 2010).

"Courts have found a wide range of statements to satisfy the 'in furtherance' requirement." *United States v. Cozzo*, 2004 WL 1151630, at *2–3 (N.D. Ill. 2004) (collecting cases). In general, a statement that is "part of the information flow between conspirators intended to help each perform his role" satisfies the "in furtherance" requirement. *United States v. Alviar*, 573 F.3d 526, 545 (7th Cir. 2009) (quotations and citations omitted). *See also United States v. Gajo*, 290 F.3d 922, 929 (7th Cir. 2002). These include statements made:

11

- to conduct or help to conduct the business of the scheme, *United States v. Cox*, 923 F.2d 519, 527 (7th Cir. 1991); *see also United States v. Johnson*, 200 F.3d 529, 533 (7th Cir. 2000);[2]

- to recruit potential coconspirators, *Cruz-Rea*, 626 F.3d at 937-38; *United States v. Haynes*, 582 F.3d 686, 705 (7th Cir. 2009), abrogated on other grounds by *United States v. Vizcarra*, 668 F.3d 516 (7th Cir. 2012);

- to identify other members of the conspiracy and their roles, *Alviar,* 573 F.3d at 545;

- to plan or to review a coconspirator's exploits, *United States v. Molt*, 772 F.2d 366, 369 (7th Cir. 1985);

- as an assurance that a coconspirator can be trusted to perform his role, *United States v. Sophie*, 900 F.2d 1064, 1073–74 (7th Cir. 1990); *see also United States v. Bustamante*, 493 F.3d 879, 890-91 (7th Cir. 2007);

- to inform and update others about the status of the conspiracy or a conspiracy's progress (including failures), *United States v. Rea*, 621 F.3d 595, 605 (7th Cir. 2010); *Alviar*, 573 F.3d at 545;

---

[2] Statements that prompt the listener to act in a manner that facilitates the carrying out of the conspiracy are also made "in furtherance" of the conspiracy. *See United States v. Monus*, 128 F.3d 376, 392 (6th Cir. 1997).

- to control damage to an ongoing conspiracy, *United States v. Johnson,* 200 F.3d 529, 533 (7th Cir. 2000); *United States v. Molinaro,* 877 F.2d 1341, 1343–44 (7th Cir. 1989)*; United States v. Van Daal Wyk*, 840 F.2d 494, 499 (7th Cir. 1988);

- to conceal a conspiracy where ongoing concealment is a purpose of the conspiracy, *Gajo*, 290 F.3d at 928-29; *United States v. Kaden*, 819 F.2d 813, 820 (7th Cir. 1987); *see also United States v. Maloney*, 71 F.3d 645, 659-60 (7th Cir. 1995);

- to reassure or calm the listener regarding the progress or stability of the scheme, *Sophie*, 900 F.2d at 1073; *Garlington v. O'Leary*, 879 F.2d 277, 284 (7th Cir. 1989);

- to report conspirators' status and in turn receive assurances of assistance from coconspirators, *United States v. Prieto*, 549 F.3d 513 (7th Cir. 2008); and

- "describing the purpose, method or criminality of the conspiracy," *United States v. Ashman*, 979 F.2d 469, 489 (7th Cir. 1992).

Finally, it has long been the rule that any statement made by a conspirator during and in furtherance of a conspiracy is admissible against all coconspirators. *Beeson v. United States*, 90 F.2d 720 (7th Cir. 1937); *United States v. Lindemann*, 85 F.3d 1232, 1238 (7th Cir. 1996); *see also United States v. Rivera,* 136 Fed. Appx. 925, 926 (7th Cir. 2005) ("Whether any other conspirator heard (or, in this instance, saw) that statement is irrelevant; agency, not knowledge, is the theory of admissibility.").

13

## IV.    ALTERNATIVE BASES FOR ADMISSIBILITY OF STATEMENTS

Many of the statements described herein and sought to be admitted against defendants are independently admissible and do not require a Rule 801(d)(2)(E) analysis, even though they were made over the course of the scheme. A defendant's own statements, for example, are admissible against him pursuant to Rule 801(d)(2)(A), without reference to the coconspirator statement rule. Further, verbal declarations that are not "assertions" subject to verification are not considered hearsay under Rule 801(a).

### A.    Defendants' Own Statements

A defendant's own admissions are admissible against him and are not hearsay pursuant to Rule 801(d)(2)(A), without reliance on the coconspirator-statement rule.[3] *United States v. Maholias*, 985 F.2d 869, 877 (7th Cir. 1993); *see also Godinez*, 110 F.3d at 455. Moreover, a defendant's own admissions are relevant to establishing the factual predicates for the admission of coconspirator statements against him. *See Potts*, 840 F.2d at 371–72; *United States v. Alexander*, 741 F.2d 962, 966 (7th Cir. 1984), *overruled on other grounds*; *United States v. Ginsburg*, 773 F.2d 798, 802 (7th Cir. 1985).

---

[3] Rule 801(d)(2)(A) provides in pertinent part that a "statement" is not hearsay if "[t]he statement is offered against a party and is . . . the party's own statement, in either an individual or a representative capacity."

14

### B.    Non-Hearsay Statements

The coconspirator statement rule is also not implicated where the relevant verbal declaration is not a "statement" within the meaning of Rule 801(a), that is, not an "assertion" subject to verification; an example would be an order or a suggestion. *See United States v. Tuchow*, 768 F.2d 855, 868 n.18 (7th Cir. 1985). This rule defines "statement" as "an oral or written assertion" or "nonverbal conduct of a person, if it is intended by the person as an assertion." Thus, a statement which is incapable of verification, such as an order or a mere suggestion, is not hearsay and does not invoke a Rule 801(d)(2)(E) analysis. *See, e.g., United States v. Tuchow*, 768 F.2d 855, 868 n.18 (7th Cir. 1985). More importantly, the coconspirator statement rule does not apply when a statement is not being offered for the truth of the matter asserted, and thus does not constitute "hearsay" as defined by Rule 801(c).[4] Accordingly, statements by alleged coconspirators may be admitted against a defendant, without establishing the *Bourjaily* factual predicates set forth above, when such statements are offered simply to show, for instance, the existence, the illegality, or the nature or scope of the charged conspiracy. *Gajo*, 290 F.3d at 929–30; *see, e.g., United States v. Herrera-*

---

[4] Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

15

*Medina*, 853 F.2d 564, 565–66 (7th Cir. 1988); *Van Daal Wyk*, 840 F.2d at 497-98;

*Tuchow*, 768 F.2d at 867–69.[5]

## V. THE EVIDENCE REGARDING THE EXISTENCE OF THE CONSPIRACIES AND THE COCONSPIRATORS' PARTICIPATION IN THE CONSPIRACIES

At trial, the government's evidence will establish that the defendant conspired to provide material support to ISIS, send threats in interstate commerce and engage in computer fraud. Specifically, as detailed above, the defendant joined, and held a leadership role in Khattab. As an organization, Khattab was dedicated entirely to supporting ISIS. Specifically, Khattab created and disseminated pro-ISIS infographics, videos, and other information. Khattab's materials included threats to civilian populations and specifics individuals who were ISIS's enemies. Further, defendant and other coconspirators gained unauthorized access to Twitter's servers in order to use legitimate (*i.e.,* non-ISIS-related) Twitter accounts to disseminate ISIS-related content, knowing that such posts were frequently deleted and that accounts posting such information were suspended or closed.

As set forth below, the government will present evidence demonstrating, by a preponderance of the evidence, the existence of the conspiracies, as well as defendant's specific participation and membership in the conspiracies. This evidence

---

[5] Of course, in many cases, statements by an alleged coconspirator will include a combination of declarations offered for the truth of the matters asserted and declarations offered for other non-hearsay purposes.

16

will include the statements of Khattab members made in two Telegram channels, which were captured by an FBI online covert employee (the OCE) who was invited to each channel. The OCE took screenshots of the conversations among the Khattab members in each of these channels. The evidence includes statements by the defendant in each channel, and discussions by other Khattab member about the defendant and his role in Khattab, including that he was named the head writer for Khattab.

As discussed below, Khattab was organized into various sections, depending on the role assigned to each of the members, including writing, designing, uploading, and others. The government seeks to admit statements of Khattab members from a Telegram channel for members of the writers group and from a Telegram channel for general use by all members of Khattab, referred to in this memorandum as the general group. The discussions in these Telegram channels relate almost entirely to the business of Khattab, including the creation, editing, and dissemination of article, infographics, videos, and other information in support of ISIS and how Khattab accomplished these goals. These conversations show Khattab's efforts to follow the instructions of ISIS's official media, Khattab's connection to those official media organizations, and Khattab's responses to instructions from ISIS official groups.

The conversations further demonstrate the agreement among Khattab members to promote ISIS's goals – including inciting terror and violence against its

17

enemies – through Khattab's work. In several instances, the conversations among Khattab members are specifically about "inciting" violence. Further, the products created by Khattab are consistent with its mission to threaten civilians in western countries and other real and perceived enemies of ISIS. The conversations demonstrate Khattab members' allegiances to ISIS and include examples of members pledging allegiance, or bayah, to ISIS's leaders.

Finally, the conversations demonstrate that Khattab members understood the need to promote ISIS on social media platforms outside of Telegram. There are several discussions of engaging in coordinated "raids" on Twitter in which ISIS supporters sought to flood the platform with as much pro-ISIS information as possible within a short period of time. Further, cognizant that pro-ISIS accounts were quickly closed or suspended, Khattab members shared and discussed methods of gaining unauthorized access to Twitter accounts, including an instructional video describing the method used by defendant to access accounts without authorization.

Accordingly, the government anticipates moving into evidence the entirety of the Khattab Telegram channels referred to herein as the "Writer's Group" and "General Group." A selection of representative communications from each group are described below.

### A. The Khattab "General Group"

The General Group was not specific to a particular division of Khattab but instead featured discussions among Khattab members from all sections, including the

18

writers group. As discussed in the representative sample of statements set forth below, this channel consisted of discussions related to Khattab's organization, membership and structure, its support of ISIS, the ways Khattab provided that support, topics for Khattab members to use in the creation of infographics, videos and other media, and the dissemination of that material online.

The conversations included numerous discussions about, and endorsements of, ISIS's use of violence and terrorist activities. Khattab members also discussed and shared Khattab branded pro-ISIS material that contained threats and called on supporters to engage in violence against ISIS's enemies, including lone wolf attacks. Discussions also included "Twitter raids" and methods of hacking social media accounts or using accounts hacked by others to support ISIS.

The defendant was an active and frequent participant in the General Group.

***Discussions Related to Khattab's Organization, Membership and Structure***

The General Group included discussions among Khattab members related to the organization, membership and structure of Khattab. For example, one Khattab member posted a list of new members of the Writer's Group and announced that defendant would "take the responsibility of dealing with them" as the leader of that section.[6]

---

[6] "GX" refers to the government's anticipated trial exhibits. GX 245

19

One post by a Khattab member contained a list of sections of Khattab and each section's responsibilities. These sections included: writers, design, production, audio, and uploading and posting.[7] Khattab members also talked about of transcribing content from ISIS official media groups like Al-Naba and the possibility of establishing a new section within Khattab dedicated to transcriptions.[8] In other instances Khattab members welcomed new "brothers" to Khattab, including translators.[9] Similarly, Khattab members discussed having information translated to Bengali and Italian.[10]

Khattab members frequently posted information about Khattab materials that were either ready for release or that members were asking to be created. For example, the defendant shared information about an ISIS operation and another Khattab member responded, "This operation needs a design, it shouldn't pass as if nothing has happened." Defendant responded that the member should post it on Facebook and Twitter.[11]

In June 2018, Khattab members discussed a "campaign" or topic to be addressed, called the Baghdad of the Caliphate campaign and in that context,

---

[7] GX 256

[8] GX 259

[9] GX 260

[10] GX 288

[11] GX 275

20

defendant asked if a design could be created for an article. Another member responded that "you write the article, and it will be sent to the design section. You know this Foundation better than me [defendant]". In the same discussion, members share infographics related to this campaign.[12]

Discussions in the group also included training opportunities and other ways of accessing information and tools helpful for Khattab. For instance, the defendant shared registration information for a "second course of publication uploading, be a Mujahid and don't be a spectator." For those participating, defendant stated "we suggest using the secured browser, TOR."[13]

### *Discussions Related to ISIS Official Media*

Many Khattab posts specifically endorsed using ISIS official media. For instance, in January 2018, defendant posted a link to "Voice of Al-Zarqawi" and wrote "pay attention, dear; when our State publishes and announces a release and say "Soon, allah willing," "what do you think it wants from Us? They want us to spread the announcement on the widest scale because it is an important release. So what are you going to do? Gather your strength and set Twitter ablaze."[14]

In another post, a Khattab member posted a link to a downloadable file titled "Media War," writing "The infidels have designated a large sum of money to stop the

---

[12] GX 296

[13] GX 212

[14] GX 218

21

Islamic State Media and its supporters. The more the infidels lurk around the media of our State, the more we know that we are defending a great outpost."[15]

In a January 2018 post, the defendant shared information about adhering to "official" ISIS media, noting that "the official media department has a reason for not publishing certain news." Defendant added that the Islamic State "has media partners who will go into the battlefield with their cameras to show the truth, so help them and don't be a burden on them."[16] Defendant's description is consistent with testimony the government anticipates that ISIS expert Aaron Zelin will offer at trial. Namely, that ISIS embedded media personnel, including camera operators in battlefield settings to capture footage for use by ISIS's media group.

In a March 2018 discussion, a Khattab member asked if a particular video was "official," referring to ISIS official media. The defendant responded, "It wasn't issued by the State Media, but it appears that the Media Office urged on releasing it, because the brothers at Fursan Al-Rafi' released it, and the brothers at Fursan take guidance from the Office."[17]

Also in March 2018, defendant posted a list of hashtags related to who is or is not an ISIS supporter, citing "he who doesn't abide by the official media of the

---

[15] GX 223

[16] GX 248

[17] GX 237

Monotheists State," who "opposes the official [media]," as an example of a non-supporter.[18]

A Khattab member also wrote, consistent with ISIS's official media messaging, that "the media war is not less important than the military war. If the military war is aimed to control lands, the media war is aimed to control the mind. The Islamic State understood the situation and created a comprehensive council."[19]

Khattab members, including the defendant, routinely shared information and news releases from official ISIS media foundations, such as Amaq News Agency.[20] A Khattab member also shared a pdf of a document called "You are a Mujahid, o media person." The defendant was the first member to respond, praising the person who shared the document.[21]

The General Group also included discussions among Khattab members about a proposed merger with another pro-ISIS group called Al-Wafa. The merger did not take place and the resulting conversations involved Khattab members creating and drafting several statements in which Khattab reaffirmed its allegiance to ISIS and ISIS's official media department.[22] According to one statement, "Khattab Foundation

---

[18] GX 241

[19] GX 277

[20] E.g., GX 242

[21] GX 254

[22] E.g., GX 257

23

adheres to what is issued by the official and does not contradict it at all."[23] A separate post contained a "proclamation of support" for Khattab by another pro-ISIS group. That statement described Khattab as a "supporter of the Caliphate State."[24]

In May 2018, Khattab members posted images and information related to renewing their pledges of allegiance (bayah) to ISIS's leader.[25]

Several posts also showed Khattab's commitment, as a group, to supporting ISIS. For example, in July 2018, a Khattab member wrote, "Steadfastness but no retreat; ferocious war; we are back to ruffle the lives of the apostates and support our State and the mujahidin."[26] The defendant wrote, "we reiterate that there is no support on Telegram because it is a closed world exclusive for the supporters. … Support should be carried out on social media websites in areas populated by common Muslims." He further wrote, "Support is not limited to what is officially released from news and victories only" but also "publishing the doctrine of the Islamic State."[27]

In September 2018, defendant wrote "Brothers, there is an official campaign. Will you participate or what?" and posted a link to Al Naba, an official ISIS publication. The Al Naba post discussed the "Province of #Aden; Soon, Allah

---

[23] GX 255; *see also* GX 257

[24] GX 256

[25] GX 285

[26] GX 302

[27] GX 302

24

willing"[28]. Defendant added that he would write an article, which was praised by a Khattab member. Another member wrote that "the supporters have been preparing for the campaign for more than two weeks" and called on Khattab members to "make a design" for the article.[29] One member wrote, "I can post on social media websites" and "I am available to help if you need anything from me." Members also discussed adding a chant related to the campaign. One asked defendant to "post the dossier of the campaign." The campaign information was subsequently shared by a Khattab member. It included: "incitement messages to continue the fight and repel the disbelievers," and "threatening messages for the enemies of the Islamic States, indicating that it is bent on carrying out its threat to eradicate the sects of disbelief and disarray."[30]

Khattab members also shared information about accessing official ISIS media channels online. For example, in connection with Telegram channels for official ISIS media organizations, one member noted that "due to the repeated deletion, we decided not to post the links in the groups; therefore, we decided to add anyone who wishes" to channels including ISIS official media groups such as Al-Himmah Library,

---

[28] As discussed above, Khattab previously participated in a similar campaign title focused on Baghdad.

[29] GX 305

[30] GX 305

25

Al-Naba newspaper archive, Ajnad Foundation chants, Audio archive of Al-Bayan radio, Rumiyah Magazine and Al-Naba infographic.[31]

### *Discussions Related to Violence and Threats*

The defendant shared information in the General Group that reflected calls for violence on behalf of ISIS and endorsements of violence. For example, on November 6, 2017 defendant posted a video link with a still image of a severed head with the heading "Province Support Army" and stated it was "for dissemination."[32]

In another post, the defendant responded to news of ISIS fighters controlling most of a University in Anbar province, writing, "Post it brothers, to cause confusion and spread terror within the hearts of those who disbelieved."[33]

In another post, defendant wrote that "after faith, martyrdom operations are the most powerful weapon possessed by the Mujahidin".[34] Defendant also praised examples of ISIS's violent attacks, describing a video of "parents of those killed in an ambush in Kirkuk" as "filled with screams and tears[.] It is an amazing video."[35] He also described the perpetrator of a bombing as "I swear he is courageous."[36]

---

[31] GX 309

[32] GX 209

[33] GX 211

[34] GX 232

[35] GX 233

[36] GX 282

26

In other instances Khattab members shared violent imagery, with one describing how much "brain" was visible in a video. On that occasion, the defendant responded to the image, calling it "perfect."[37]

### *Discussions about Khattab Releases*

Khattab members frequently disseminated links to Khattab releases, including videos, infographics and articles, including those written by the defendant. For example, in December 2017, Khattab members shared links to Khattab images of a beheaded Santa and a second image with the text "Await the storm of the Caliphate, it will turn your night into fire and your security into destruction." The images were described by a Khattab member as "for posting."[38]

Another Khattab member shared an infographic titled "Soon in Baghdad" with a description "let the far and the near, the East and the West know that we have sworn and determined that without the Islamic State there is no security and no peace in Iraq and Syria."[39]

In May 2018, a Khattab member posted an infographic with a threat directed at ISIS's enemies: "So prepare your coffins and dig your graves. We will dispatch you

---

[37] GX 246; *see also* GX 275 (praising attacks)

[38] GX 216

[39] GX 286

27

to hell one group after another. What I forthcoming is more serious and bitter."[40] Posts in June 2018 included a "#New #design" titled 'Russia is the next target."

Around the anniversary of September 11, Khattab members shared an infographic featuring the twin towers falling with the caption, "Our upcoming terror will make you forget what you saw in the New York and Washington raids" and accompanied by the hashtags #raids_of_newyork_and Washington and #Khattab_Media_Foundation. A similar infographic showed an image of a plane flying toward the twin towers with a picture of Osama bin Laden superimposed over the image. It described the "New York and Washington raids" and contained the caption "we remind you of them and promise you terror that will make you forget the most precious thing that you have." After these infographics were shared in the group, a Khattab member posted "foreign hashtags about September 11," including #NeverForget, #Remember911, and #Wherewereyou.[41]

Similar lists of links and publications were shared on the Khattab General Group throughout the charged conspiracy.[42]

### *Discussions Related to Access to Social Media Accounts*

Discussions among Khattab members frequently involved how to access and use social media accounts to support ISIS.  For example, in July 2017, one Khattab

---

[40] GX 292

[41] GX 307

[42] GX 224; *see also* GX 268

28

member shared login information for two Twitter accounts for use by Khattab members and asked whether the accounts worked.[43]

In January 2018, and at other times, Khattab members shared screenshots of Twitter posts under what appear to be fake names (*e.g.,* Gary Morris).[44] In a May 24, 2018 post, a Khattab member shared a "new account" with the name "Gary Newman" and said, "I will try a new method for posting, perhaps it will prolong the account's life."

The defendant shared information related to getting ISIS supporters access to social media accounts. For instance, on September 20, 2017, defendant posted that a "group called Bank al-Ansar claimed creating 9000 Facebook and 43000 Twitter accounts for the Islamic State supporters." Khattab members discussed accessing Bank al-Ansar and shared information about getting accounts from that source. Later, the defendant posted that the Bank Al-Ansar would provide supporters with Facebook and Twitter accounts "that are ready to raid the social media, to post the publications of Al- Furqan foundation."[45]

In September 2017, the defendant re-posted a message "To our beloved supporters, who are confined in telegram…All you need to do is (copy, and paste, then

---

[43] GX 203

[44] GX 218

[45] GX 263. Al-Furquan is an official ISIS media department and is identified as an alias for ISIS in the State Department's Designation of ISIS as a Foreign Terrorist Organization.

29

post on Twitter), I swear you have no excuse today. Ready tweets, available accounts, available confirmation codes, what else do you want?!!!"[46]

At other times, Khattab members discussed pro-ISIS videos being removed from YouTube "for violation of YouTube policy regarding the violence or visual content." Defendant responded to this comment, writing "YouTube does not last."[47]

The defendant also shared a March 2018 post announcing a "supporters reservoir" to "provide the supporters with Twitter accounts and fake numbers."[48]

Khattab members also discussed gaining unauthorized access to "seized" or hacked social media accounts. For example, one member asked if a particular account was "a new account?" and added, "Better to seize one, it will last longer with you." Another member responded that they "had no time" to "seize" an account, and the Khattab member responded, "It's easy, I mean, how long do you need to seize one? An hour; no, one minute only, less tha[n] what you need to create an account." The discussion also included a reference to getting accounts from Bank Al-Ansar.[49] A Khattab member then posted specific instructions for hacking Twitter accounts using Hotmail.com email accounts: the same technique that the government will show the defendant used in connection with Counts 3, 4, 6, 8, and 10, alleging violations of the

---

[46] GX 210

[47] GX 227

[48] GX 251

[49] GX 260

30

Title 18, United States Code, Section 1030.[50] Using the technique required that the Khattab member send "a proof that you are a support for one time only, so that he can add you to the channel with the emails that are ready to seize." A Khattab member also said to "Tell him that you are from Khattab Foundation and he will add you" to the channel.[51]

In subsequent conversations, a Khattab member stated that he "seized" a new account and another member advised him to "change the name" on the account. In the same conversation a Khattab member noted that a "seized" account had a profile picture of a "girl" and another Khattab member advised that he would delete the image.[52]

Later, a Khattab member wrote about using hacked accounts to share ISIS information writing, "We are going to restart posting the tweets that we have talked about before. It's a variety of tweets ready for Twitter, taken from several accounts, some of which belong to the enemies of the Islamic State; Allah permitting, these tweets won't get deleted, but if it gets deleted, wouldn't really lose a thing."[53]

The reasons Khattab was so concerned with accessing Twitter and other social media accounts were explained by Khattab members on several occasions. For

---

[50] GX 260

[51] GX 260; see also 293

[52] GX 261

[53] GX 281

31

example, one member asked "all the supporters in all groups to stop all useless conversations here [on Telegram] and go to Twitter." He added, "any post here, even if in a large group, is only seen by 900 individuals at most, and strangely, they are mostly supporters." He advised that a tweet "can be viewed by 2000 people at a minimum" and cited a supporter who "repl[ies] to famous accounts" to increase the exposure of the ISIS-related material. This comment is consistent with evidence the government will present that shows that the defendant, using hacked accounts, also replied to accounts that were followed by large numbers of people to increase the visibility of his pro-ISIS posts.

The problems with accessing social media were also discussed. In June 2018, a Khattab member described how "facebook account disappear in no time, but Twitter's stay a little longer." Defendant responded, "The destruction of Facebook." The original Khattab user then replied, "If you make a collection of general prayer designs…it's possible the account would continue, and this will be good for the reputation of the Foundation among the supporters as a camouflage account."[54]

Later discussions involved ways to use seemingly legitimate social media accounts to bring new ISIS supporters to Telegram. For instance, in a discussion about a "public campaign…that features the name of the Foundation (Khattab)," a Khattab member suggested that the posts would "disguise with public account so that

---

[54] GX 297

the name of the foundation would be famous" and "later, we would invite the members to join our original channels on Telegram." Another user asked why such account would not be closed by Facebook and Twitter. A Khattab member responded that the posts "would not include anything the violates the websites' regulations, *i.e.,* it won't include calls for Jihadi operations or anything similar," but later, Khattab would invite the followers to the original Telegram accounts.[55]

Khattab members shared additional information about how to use social media to support ISIS. For instances, one Khattab member posted an announcement from "Nashir Lil Ansar," publisher of the supporters, related to an opportunity for "junior supporters who wish to learn the methods of support on the #Twitter application with simplified steps and they would be provided with account to work on them."

### *Twitter Raids*

Khattab members used the social media accounts once they had access to them. Numerous discussions about "raids" on Twitter took place in the General Group. For example, in July 2017, one Khattab member described what to do during a Twitter raid: "1. Copy the tweet from here 2. Paste it in your personal page on Twitter 3. Keep doing this until your account is DELETED. Easy?" The same member stated that the Twitter raids were "more important than a foundation, release, chant, and so on." He added that participants in the raid would receive "accounts on the private [message

---

[55] GX 306

feature on Telegram] and whoever has accounts should wait for the zero hour." A Khattab member would then "prepare the tweet for you here." He also instructed Khattab members, "if you want, you can post photos or terrorist videos." Khattab members also shared specific hashtags that were meant to amplify their posts. [56]

In another discussion, members requested access to Twitter accounts to use in a raid and for the specific start time of the raid. One member described having his Twitter account "cancelled recently," noting that it "lasted for 10 days. It was the first time that it endured." They also discussed metrics for the success of their online postings: one member stated that he had "a site that shows your tweeting activities, and how many have seen it." One member shared a post he made on Twitter and described the Twitter raid, writing, "Guys, the raid continues. Post whatever ammunitions you have. And blow up yourself, too. Until your account gets blocked."[57] Throughout the charged conspiracy window, Khattab members engaged in similar discussed about Twitter raids, requested access to Twitter accounts and shared images of their posts on Twitter.[58]

Similar discussions took place in January 2018, where a Khattab member wrote "Get ready brothers. We have a raid on Twitter." Another asked, "Do you need Twitter accounts?" and another responded, "I need a Twitter and Facebook accounts

---

[56] GX 204

[57] GX 202

[58] GX 204

34

so I can participate with you."[59] Discussions related to Twitter raids continued through at least August 2018.[60]

### *Discussions Related to Concealing the Conspiracies*

In many instances, Khattab members discussed steps to conceal their online actions and identities.[61] For example, a member described using a "VPN[62] secure browser you can log in from a different region" and offered to "provide a subscription for one year for whoever wants it."[63] At other times members shared "wonderful VPN applications for free." Other posts included calls to "increase your security awareness."[64] The defendant share information about what to do if an account was suspended and posted links to automated Telegram accounts for Khattab members to use.[65] Other posts by Khattab members included information about the TOR browser which a Khattab member described as "Thorough instructions on connecting the entire computer to Tor network in order to hide the real location and to encrypt all your connections."[66] Other posts included recommendations for obtaining

---

[59] GX 218; GX 260

[60] GX 303

[61] GX 295

[62] VPNs or virtual private networks mask the users true IP address, and therefore, mask the users location.

[63] GX 220; *see also* GX 223

[64] GX 222

[65] GX 222

[66] GX 223.

35

temporary phone numbers and other ways to obtain phone numbers anonymously.[67] Defendant shared information related to using VPNs, encrypted messaging and other tools to avoid the "security agencies of the governments in the world" whose goal was to "find out your geographic location and gather evidence against you."[68]

Other posts discuss Khattab members deleting their Telegram accounts and returning with new names.[69] Khattab members also shared information about preventing "the leakage of the IP address with Android system 7.1."[70]

In June 2018, a Khattab member discussed that it "might be very dangerous for you if you keep all your information in one place, therefore it is very important to have backup copies for your important information." Other members responded by sharing VPN-related information and citing the arrest of "Wahibah Issa Dayis" who was arrested and who "resides in America."[71] Another Khattab member wrote that is "seems that the sister's knowledge about security matters was zero, and pasting information stating that Dais accessed an account from an IP address that resolved to her home. Likewise, another member wrote that using "Facebook, Twitter and WhatsApp are the shortest way to arrest." One member shared a series of articles

---

[67] GX 223

[68] GX 242

[69] GX 260

[70] GX 277

[71] GX 301; Waheba Dais was charged with attempted provision of material support to ISIS in the District of Wisconsin. *See* 18-CR-143.

from Afaq Electronic Foundation, which provide information technology-related information for ISIS supporters, about the "capabilities of the intelligence services in collecting information and tracking users via the internet."[72]

## B. The Khattab "Writer's Group"

The discussions within the writers group centered on the tasks related to writing, editing and distributing articles under the Khattab brand. For example, on December 7, 2017, defendant shared a draft article called the "Whiffs of Faith" with the members of the Writer's Group channel. Defendant stated the draft was "for editing."[73] Indeed, on several occasions, the defendant posted drafts of articles in the writer's group for review and editing. For example, on February 10, 2018, Safoo shared a draft of an article in which he wrote "You are not content by watching the Mujahidin [ISIS supporters] who joined the Caliphate" and encouraging ISIS supporters to join the caliphate.[74]

Khattab members also shared topics that members could choose to write about. For example, on December 13, 2017, a member of Khattab posted a list of topics, including "a short narrative of the beginnings of the conquests by the Mujahideen [ISIS supporters]" and asked, "Who wants to write this article?" The defendant responded that "we need raw materials" and stated that there was a need to "gather

---

[72] GX 301

[73] GX 103

[74] GX 106, GX 111

more information." Another Khattab member responded that it was "possible to search the battle archive on the internet," "as long as it agrees with the media of the State [ISIS]."[75] In February 2018, a member of Khattab posted a list of topics for the writer's group including: "incite targeting the shrines of democracy, its symbols, its propagators, and encourage killing them" and stated to the group, "if you want, write an article about this scenario."[76]

Khattab members also discussed what should not be included in their publications. On January 22, 2018, defendant wrote about a scholar and noted that "the State [ISIS] considers him an apostate" and as a result, defendant concluded that "I will not mention [the scholar] at all."[77]

Changes to personnel and leadership were discussed. On March 22, 2018, the leader of Khattab announced that defendant would take over as the head of the writer's group, stating the former head writer's "replacement is [defendant] Abu Al-Abbas Al-Iraqi." The Khattab leader also greeted other new members of the writers group. The defendant responded by providing a series of guidelines for the writers to follow and posting descriptions of two serials that the writers group would work on and asking for assistance in working on the topics he specified.[78]

---

[75] GX 104

[76] GX 107

[77] GX 105

[78] GX 108

Similarly, on May 18, 2018, a Khattab member identified defendant to a new member of the group as the "head of the section here" and described that "copying of articles will be here for editing" and that defendant "will brief you more into the topic details." Defendant responded to the new member, "you and your pen are welcome." Several other members responded by greeting the newest addition to the group. Shortly after, a Khattab member posted a draft article for review and several Khattab members commented on the draft.[79]

As the leader of the writers group, the defendant provided instruction to members of his team and they responded. On March 31, 2018, defendant instructed members of the writers group to "make yourselves a share in Jihad," noting that "our brothers are combatting the infidels and are offering their blood; we shouldn't stop from offering support to them." Another Khattab member wrote that the group "should not forget to seek reference from Al-Naba articles and the official publications, whose content was similar to the same issue [being addressed by Khattab]."[80]

Similarly, on April 17, 2018, defendant instructed other Khattab members "do not start editing until you get my notification." He further instructed the writers to

---

[79] GX 112

[80] GX 109

"focus on making avid research in your topic before writing. The article must not be written hastily."[81]

On May 16, 2018, a member of the writers group discussed Khattab's support of ISIS and its leadership, writing, "We congratulate the Muslims in general and specifically our honorable shaykh and Imam, the prince of the believers, Abu Bakr Al-Baghdadi [ISIS's former leader]…and all the Mujahidin brothers fighting in the cause of Allah in all states, for the advent of the blessed month of Ramadan. We also congratulate all the supporters of the Islamic Caliphate States all over the globe."

Writers group discussions also involved workflow for Khattab publications. In May 2018, defendant described the process followed by Khattab for editing and disseminating articles and the way in which the different department collaborated to get information ready to be published. He wrote that "every article written by an author comes to me first, then I forward it to the editors, then it is forwarded to the designed, then to coordination, then to upload and dissemination."[82]

On May 20, 2018, defendant posted an article that described "two sides on this divide: the Islamic State on one side and its enemies from nations of infidels on the other side." He cited events in Marawi, which were the subject of a separate video by Khattab that incited ISIS supporters to engage in violence and wrote of the ISIS

---

[81] GX 110

[82] GX 113

40

fighters, "I swear, they are the soldiers of my State." Defendant praised ISIS's violent attacks, writing that "the soldiers of the Islamic State" "harvested 260 heads of the apostates." Defendant ended the article with an explicit call to readers to target social media accounts writing, "Rise up, support your brothers and don't allow an opportunity to pass you by. Break into Facebook, invade Twitter, and disseminate on YouTube."[83] Shortly after, another Khattab member posted a draft article "for editing" and other members responded with revisions and suggestions.[84]

On May 26, 2018, defendant discussed an article being edited and wrote that "Khattab Foundation will contribute to this campaign."[85] Khattab members discussed several of these "campaigns." For example, in May 2018 Khattab participated in a campaign titled "Baghdad of the Caliphate." According to a post by a Khattab member, that participation involved "releases," "designs," "articles," and "postings." Defendant responded that "we need a writer who will write an article about the operations in Baghdad and its north. In support of our Mujahidin [ISIS supporting] brothers there."[86] Conversations among Khattab members about this campaign continued and included an offer from one member to assist as an editor, and

---

[83] GX 113

[84] GX 113

[85] At trial, the government will offer testimony from Aaron Zelin that ISIS official media groups released "campaigns" or specific topics for publications and other pro-ISIS information that groups like Khattab adopted and responded to, putting out pro-ISIS information consistent with the campaign topics distributed by ISIS official groups.

[86] GX 114

41

discussions among several members about an article that described "the soldiers of the caliphate in the province of Baghdad are continuing their jihad and their pledge of allegiance to the prince of the faithful [ISIS's leader]…and their swords continue to be drenched with the blood of filthy Shi'ites and the apostates." In the same conversation, defendant shared several examples of recent news releases, including releases from ISIS official media group Amaq News Agency, related to ISIS's military efforts as examples of topics to be written about. Defendant also responded to a Khattab member who was working on an article, "This is not an order but please hurry up."[87]

On September 24, 2018, a member of Khattab described the preparations for the "steadfastness" campaign, and included a list of points to be addressed by Khattab in the campaign including: "incitement messages to continue fighting" and "threatening messages to the enemies of the Islamic State that it's continuing to carry out its threat to eradicate the roots of disbelief and apostasy sects." The same Khattab member also wrote that "speeches by Islamic State leaders" and items from Al-Naba should be "repost[ed]," "whether through designs or audio quotations or in the form of release and articles."[88] At trial, the government expects to admit testimony that groups like Khattab frequently used official ISIS media releases, like those from Al-

---

[87] GX 115

[88] GX 117

Naba, and repurposed them for "new" releases in order to further the goals of ISIS's media department.

Later in the Writer's Group discussions, defendant and other Khattab members discussed removing inactive members from the group, citing other pro-ISIS organizations that followed a similar model. One Khattab member suggested that he Khattab "administrators should submit a report to the Emir each month" stating what work was done in their respective sections.[89]

## VI.    COCONSPIRATOR STATEMENTS

The statements between the coconspirators, made in furtherance of the conspiracy that the government intends to offer at trial fall into several categories, all concerning subjects that were integral to the charged conspiracies.[90] As demonstrated above, the statements between the coconspirators made in furtherance of the conspiracies include conversations on Telegram among Khattab members about the following:

- ISIS, ISIS official media and ISIS publications and Khattab's allegiance to ISIS and its official media.

- Supporters of ISIS, including the mujahideen (fighters), jihad, the ansar (supporters) and general opposition to westerners and ISIS's enemies.

---

[89] GX 120

[90] As stated above, the government is not detailing each and every proposed coconspirator statement of each witness or document.

43

- The creation and dissemination of threats.

- The creation and dissemination of pro-ISIS information.

- ISIS's use of violence and engagement in terrorism and terrorist activities.

- Khattab members pledging bay'ah (*i.e.*, allegiance to ISIS).

- Khattab's organization, memberships and structure, including its leadership and responsibilities of its members.

- Use of social media to support ISIS, including methods of gaining unauthorized access to social media accounts, Twitter "raids", and access to social media accounts.

- Concealing the identities of Khattab's members on Telegram and on other social media platforms.

A number of out-of-court statements from the Khattab Telegram channels will be admissible without regard to the coconspirator hearsay rule, because they are statements of the defendant, statements not offered to prove the truth of the matter asserted, or for other reasons. A defendant's own statements, for example, are admissible against him pursuant to Rule 801(d)(2)(A), without reference to the coconspirator statement rule. *United States v. Maholias*, 985 F.2d 869, 877 (7th Cir. 1993). The coconspirator statement rule is also not implicated where the relevant verbal declaration is not a "statement" within the meaning of Rule 801(a). This rule

44

defines "statement" as "an oral or written assertion" or "nonverbal conduct of a person, if it is intended by the person as an assertion." Thus, a statement which is incapable of verification, such as an order or a mere suggestion, is not hearsay and does not invoke a Rule 801(d)(2)(E) analysis. *See, e.g., United States v. Tuchow*, 768 F.2d 855, 868 n.18 (7th Cir. 1985).

For example, statements by the defendant during his conversations with coconspirators are independently admissible under Rule 801(d)(2)(A), and many of the coconspirators' responses are admissible to place the defendant's statement in context. Other statements will be offered by the government for purposes other than their truth, including, for example, instructions by coconspirators to other Khattab members, descriptions of Khattab's publications including hashtags and captions, and links to those publications and images and files related to those publications.

The remaining statements, as captured by the representative samples described above, are admissible as coconspirator statement under Fed. R. Evid. 801(d)(2)(E) for the reasons described in the case law summarized above. As is evident from the descriptions above, the discussions within the Khattab telegram channels demonstrate that Khattab members were part of the charged conspiracies, that the conspiracies were ongoing at the time the statements were made and that the statements were in furtherance of the conspiracies. Thus, under the case law

45

summarized above, all such statements are properly admitted at trial as coconspirator statements under Federal Rule of Evidence 801(d)(2)(E).

## VII.   CONCLUSION

For the reasons described above, the statements in the Writers group and General group are properly admissible as coconspirator statements under Fed. R. Evid. 104(a), 801(d)(2)(E) and *Santiago*, 582 F.2d 1128. Accordingly, the government respectfully requests that this Court find that coconspirator statements are admissible pending the introduction of evidence to support this proffer.

Dated: November 5, 2021

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:    */s/ Melody Wells*
BARRY JONAS
MELODY WELLS
Assistant U.S. Attorneys
(312) 353-5300

ALEXANDRA HUGHES
Trial Attorney
Department of Justice
National Security Division

46