**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATE OF AMERICA** | ) ) ) | No. 18 CR 696-1 |
| vs. | ) ) | Judge John Robert Blakey |
| **ASHRAF AL SAFOO** | ) ) ) | |

**DEFENDANT'S MOTION TO DISMISS COUNTS FOUR, SIX, EIGHT, and TEN (UNAUTORIZED ACCESS of a PROTECTED COMPUTER) on the GROUNDS OF <u>MULTIPLICITY</u>**

NOW COMES the defendant, **ASHRAF AL SAFOO**, by and through his counsel **PATRICK E. BOYLE**, and moves this Court to dismiss Counts Four, Six, Eight, and Ten of the Second Superseding Indictment returned against him on March 12, 2020. Doc.161. Mr. Al Safoo moves to dismiss Counts Four, Six, Eight, and Ten of the Indictment as being impermissibly multiplicitous in violation of the Double Jeopardy Clause of the Fifth Amendment.

**I. Summary of the Argument**

Mr. Al Safoo moves to dismiss Counts Four, Six, Eight, and Ten on the grounds that the Counts charge a single course of conduct, specifically the unauthorized access to a protected computer, as multiple violations of 18 U.S.C. § 1030(2)(a)(C) (multiple-acts/single-statute multiplicity), in violation of the Double Jeopardy Clause of the Fifth Amendment. In support of his motion, Mr. Al Safoo argues that unauthorized access to a protected computer charged in Counts Four, Six, Eight, and Ten arises from a singular course of conduct – the

1

conspiracy charged in Count Three[1] and incorporated by reference into Counts Four, Six, Eight, and Ten – and therefore constitutes one course of criminal conduct.

Pursuant to *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221 (1952), Mr. Al Safoo argues that he may only be charged with multiple provisions of services if the textual context and legislative history of section 1030(a)(2)(C) establish a clear indication that Congress intended to authorize multiple punishments for providing services to a terrorist organization. In support of his argument for dismissal Mr. Al Safoo contends that the text context, and legislative history, are at best ambiguous as to Congress's intended unit of prosecution, and therefore under the "rule of lenity" this Court is obligated to find that Congress did not authorize multiple punishments. Accordingly, this Court should require the government to either dismiss Counts Four, Six, Eight, and Ten, or elect a single count on which to proceed.

## II. Jurisdiction

Federal Rule of Criminal Procedure 12(b)(3)(B)(ii) provides that a motion involving a defect in the indictment, including charging the same offense in more than one count (multiplicity), "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B)(ii). This motion is filed in compliance with this Court's scheduling order, which satisfies the timeliness requirement of Fed. R. Crim. P. 12(c). In deciding the legal questions presented by Mr. Al Safoo's multiplicity motion, this Court may make necessary preliminary

---

[1] Mr. Ashraf Al Safoo does not challenge the conspiracy to violate 18 U.S.C § 1030(a)(2) and (c)(2)(B)(iii) in Count Three as multiplicitous in recognition of the well settled rule that "conspiracy is a crime that is separate and distinct from the substantive offense that is the object of the conspiracy." *United States v. Rosa*, 17 F.3d 1531, 1543 (2d Cir. 1994); *see also United States v. Feola*, 420 U.S. 671, 693 (1975) ("[C]onsecutive sentences may be imposed for the conspiracy and for the underlying crime.").

findings of fact so long as the Court does not "invade the province of the ultimate finder of fact." *United States v. Nukida,* 8 F.3d 665, 669 (9th Cir. 1993).

### III. Counts Three, Four, Six, Eight, and Ten

Counts Three, Four, Six, Eight, and Ten, charge the Defendant with one count of conspiracy to commit unauthorized access to a protected computer and four counts of unauthorized access to a protected computer in violations of 18 U.S.C. § 1030(2)(a)(C) for attempted provision of material support in the form of services to ISIS, as follows:

- Count Three alleges that "on or about April 2018 and continuing until at least on or about October 13, 2018… Mr. Al Safoo intentionally accessed a protected computer used in interstate and foreign commerce without authorization, and thereby obtained information from a protected computer". It was part of the conspiracy that Khattab members sought to disseminate information on behalf of ISIS using Twitter…it was further part of the conspiracy that Khattab members shared information related to "seizing" or "hacking" social media accounts, including Twitter accounts, in order to disseminate information…it was further part of the conspiracy that Khattab members created accounts on Hotmail as a means to reset passwords for Twitter Accounts registered to third parties.[2]

- Count Four alleges that "on or about September 16, 2018… Mr. Al Safoo, intentionally accessed a protected computer used in interstate and foreign commerce without authorization, and thereby obtained information from a protected computer, through Twitter Account A …".

---

[2] Each of the charged intrusions into Twitter accounts is alleged as an overt act of the conspiracy.

- Count Six alleges that "on or about September 17, 2018… Mr. Al Safoo, intentionally accessed a protected computer used in interstate and foreign commerce without authorization, and thereby obtained information from a protected computer, through Twitter Account B….".

- Count Eight alleges that "on or about September 20, 2018… Mr. Al Safoo, intentionally accessed a protected computer used in interstate and foreign commerce without authorization, and thereby obtained information from a protected computer, through Twitter Account C…".

- Count Ten alleges that "on or about September 25, 2018… Mr. Al Safoo, intentionally accessed a protected computer used in interstate and foreign commerce without authorization, and thereby obtained information from a protected computer, through Twitter Account D…".

## IV. Argument

### A. Single Statute/Multiple Act Multiplicity

In researching this motion, counsel was not able to find a prior published case considering the question of whether 18 U.S.C. § 1030(a)(2) and (c)(2)(B)(iii) criminalizes a course of conduct (unauthorized access to a protected computer), permitting only one punishment, or instead authorizes punishment for each individual act of support committed during a course of conduct. Accordingly, to the best of counsel's knowledge, Mr. Al Safoo's motion presents a novel question of law. The legal framework for the analysis, however, is well established.

Multiplicity is the charging of a single offense in separate counts of an indictment. *United States v.* Allender, 62 F.3d 909, 912 (7th Cir. 1995); *United States v.* Song, 934 F.2d 105,

4

108 (7th Cir. 1991). The potential for multiplicitous charges arises when the government charges an uninterrupted course of criminal conduct either as a violation of multiple statutes, or as multiple violations of the same statute. In such instances, a defendant is exposed to the threat of receiving multiple punishment for the same offense. *Allender*, 62 F.3d at 912.

"Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether these are two offenses or only one is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 52 S. Ct. 180, 304 (1932); *see also Illinois v. Vitale*, 100 S. Ct. 2260, 2265 (1980) (reaffirming the *Blockburger* test.) The *Blockburger* test is generally applicable when the same act or transaction constitutes a violation of two distinct statutory provisions but *is inapplicable when the same act constitutes a violation of only one statutory provision*. *United States v. Woods*, 568 F.2d 509, 513 n.1 (6th Cir. 1978). "Our court has held that the same facts test in *Blockburger* is inapplicable to offenses charging a course of conduct, at least where Congress has not indicated the appropriate unit of prosecution." *Id.* at 513 n.1 (internal quotation omitted). Where the same act or transaction is alleged to have resulted in multiple violations of the same statutory provision, the test is "[w]hat Congress has made the allowable unit of prosecution." *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221 (1952); *see also United States v. Consol. Coal Co.*, 424 F. Supp. 577, 587 (S.D. Ohio 1976) (*quoting C.I.T. Credit Corporation.*) "[W]hen an Act of Congress is ambiguous as to the allowable unit of prosecution, doubts are resolved in favor of lenity for the accused." *United States v. Jones*, 533 F.2d 1387, 1392 (6th Cir. 1976) citing *Bell v. United States*, 349 U.S. 81, 83 (1955).

In the Seventh Circuit the test for multiplicity is whether each count requires proof of a fact which the other does not. *United States v. Conley*, 291 F.3d 464, 470 (7th Cir. 2002); *United*

5

*States v. Marquardt*, 786 F.2d 771, 778 (7th Cir. 1986). "If one element is required to prove the offense in one count which is not required to prove the offense in the second count, there is no multiplicity." *Conley*, 291 F.3d at 470. To determine whether a particular indictment contains multiplicitous counts, the essential question is the appropriate unit of prosecution under the statute in question – the minimum amount of activity for which criminal liability attaches. *Allender*, 62 F.3d at 912 (citing *United States v. Song*, 934 F.2d 105, 108 (7th Cir. 1991).

For the Seventh Circuit in determining the appropriate unit of prosecution, the court must first look to the language of the statute itself. Song, 934 F.2d at 108 (citing *United States v. Podell*, 869 F.2d 328, 330 (7th Cir. 1989). If the statute unambiguously reflects legislative intent, the inquiry ends. Podell, 869 F.2d at 331. If the statutory language is ambiguous, the next step is to examine the statute's legislative history. Song, 934 F.2d at 108 (citing *United States v. Kimberlin,* 781 F.2d 1247, 1253 (7th Cir. 1985). If the legislative history does not resolve the question, then the court "must apply the rule of lenity, a rule of statutory construction which dictates that in cases of ambiguity or doubt as to congressional intent, only one offense may be charged." Song, 934 F.2d at 108 (citing *Bell v. United* States, 349 U.S. 81, 83 (1955).

This Seventh Circuit approach is the same in the Ninth and Eighth Circuits. The Ninth Circuit held in *Brown v. United States,* 623 F.2d 54, 57 (9th Cir. 1980), that in determining what Congress has deemed the 'unit of prosecution' courts are limited to materials that directly inform congressional intent. *Id.* at 57. There the Ninth Circuit explained, "[u]nless [the Court] can find from the face of the Act or from its legislative history a clear indication that Congress intended to authorize multiple punishments for a single transaction, we are obliged to construe the Act against the harsher penalties that result from cumulative punishments. *Id*. at 57 quoting *United*

6

*States v. Clements*, 471 F.2d 1253, 1254 (9th Cir. 1972).[3] Similarly in *United States v. Chipps*, 410 F.3d 438 (8th Cir. 2005), the Eighth Circuit described the test for single statute/multiple act multiplicity as whether Congress sought to punish separately individual acts, as looking to the "statutory language, legislative history, and statutory scheme to ascertain what Congress intended the unit of prosecution to be." *Id.* at 448. (internal cites omitted). Noting that "when Congress fails to establish the unit of prosecution 'clearly and without ambiguity,' we resolve doubt as to congressional intent in favor of lenity for the defendant." *Id.* citing *Bell v. United States*.

1. *The Plain Language of 18 U.S.C. § 1030(a)(2)(C) Does Not Clearly Prescribe Individual Intrusions as Separate Units of Prosecution*

The plain language of § 1030(a)(2)(C) is ambiguous as to the unit of prosecution thereby prohibiting multiple prosecutions for the same course of conduct. Section 1030(a)(2)(C) prohibits the intentional accesses of a computer without authorization or exceeding authorized access, "and thereby obtains information *from any* protected computer." 18 U.S.C. §1030(a)(2)(C) *(emphasis added)*. The statute structured here mirrors that of the Mann Act considered by the Supreme Court in *United States v. Bell* discussed *supra*. The Mann Act prohibits:

> The Mann Act provides that whoever knowingly transports in interstate or foreign commerce *any woman or girl* for the purpose of prostitution or debauchery, or for any other immoral purpose shall be fined not more than $ 5,000 or imprisoned not more than five years, or both. § 2 (18 U.S.C.S. § 2421) of the Act of June 25, 1910.[4]

---

[3] Judge Henderson's summation of the rules of statutory analysis governing an inquiry into the unit of prosecution authorized by a criminal statute is cited as persuasive authority. Counsel submits, however, that Judge Henderson's analysis is supported by the well-established case law of the Ninth Circuit.

[4] The Mann Act was subsequently updated to remove the gender specification for prostitution.

The Supreme Court held that the Mann Act's prohibition against the transportation of "any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose" could be reasonably read to provide a unit of prosecution based on the number of transports or the number of women, and "the ambiguity should be resolved in favor of lenity." *Id.* at 82-83. Accordingly, a defendant could not be convicted on two separate counts for making a single trip with two women. *Id.* at 83.

The government is likely to argue that *Bell* is distinguishable on its face here because in *Bell* it was a single transportation but two women, whereas here the government alleges unauthorized access into four different Twitter accounts on four different occasions. The problem with that argument is that it fails to consider the Supreme Court's decision in *Ladner v. United States*, 358 U.S. 169 (1958), also discussed *supra*.

In *Ladner* the Supreme Court considered 18 U.S.C. § 254 which criminalized anyone who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with *any person*" while engaged in or on account of the performance of official duties. The case involved an individual who fired a single shot gun blast and injuring two federal officers, despite the fact that there were two victims the statute did not authorize two punishments. The fact that the government has charged four different Twitter accounts A, B, C, and D and four different dates does not in itself create four different offenses if the reasoning in *Bell* and *Ladner* is applied equally to section 1030(a)(2)(C). The question is instead whether these actions stem from a singular criminal impulse or a distinct criminal impulse. Put another way, if all of these acts were charged in a single count, would the charge be duplicative and require unanimity as to an individual intrusion or would it be sufficient for the jury to unanimously agree that the defendant had committed the offense without unanimously agreeing on the means by which the offense was

8

committed. Counsel of behalf of the defendant respectfully submits that it would be the latter and that the text of the statute is sufficiently ambiguous as to require the government to prove separate courses of conduct to charge distinct offenses.

2. *Like Universal C.I.T. Credit Corp the Penalty Structure of 18 U.S.C. §1030 is Consistent with a Course of Conduct Offense.*

The strongest case however for finding that section 1030(a)(2)(C) is a "single course of conduct" statute is *Universal C. I. T. Credit Corp.* in itself. At issue in *Universal C.I.T. Credit Corp.* was a failure to pay wages in compliance with the Fair Labor Standards Act. The government had initially charged thirty-two violations of the Fair Labor Standards Act relying on the failure to pay each individual employee the required minimum wage, failure to pay overtime, and maintain records:

> "charging the defendant corporation, its division operations manager and two successive branch managers with violations of the minimum wage, overtime, and record-keeping provisions of the Act. **1** Thirty-two counts were laid: six for failure under § 6 of the Act to pay minimum wages, twenty for violation of the overtime provisions of § 7, and six for failure to comply with the requirements for record-keeping under § 11. Counts 1-6 charge minimum wage violations in six separate weeks, one per week, but only as to one employee in any one week and only as to three employees in all. Counts 7-26 charge overtime violations in twenty separate weeks, one per week. A total of eleven employees are involved, two violations having been charged as to each of nine employees. Counts 27-32 charge record-keeping violations as to four employees, two violations as to each of two employees being charged. Section 16 of the Act subjects an employer, offending for the first time, to a maximum fine of $ 10,000 for violation of any provision of § 15, and would, the District Court assumed, authorize a fine of $ 320,000 upon conviction under this information." *United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 219-220.

The district court had found the following language of the Fair Labor Standards Act statute in question:

> Section 215(a)(2) of the Act, supra, makes it 'unlawful for any person * * * (2) to violate any of the provisions of section 206 or section 207 of this title, or any of the provisions of any regulation or order of the Administrator issued under section 214 of this title;' subsection 5 thereof, makes it an offense 'to violate any of the

9

provisions of section 211(c) of this title, or to make any statement, report, or record filed or kept pursuant to the provisions of such section or of any regulation or order thereunder, knowing such statement, report, or record to be false in a material respect.' *United States v. Universal C. I. T. Credit Corp., 102 F. Supp. 179, 183-184;*

The district court found the offense constituted a course of conduct offense and dismissed all but three of the counts as multiplicitous. The Supreme Court in upholding the district court's decision first observed:

> The problem of construction of the criminal provisions of the Fair Labor Standards Act is not easy of solution. What Congress has made the allowable unit of prosecution -- the only issue before us -- cannot be answered merely by a literal reading of the penalizing sections. *Universal C. I. T. Credit Corp.*, 344 U.S. at 221.

To make its decision the Court focused on the penalty section of the act. The Court held that while the penalty section permitted individual civil actions for each worker harmed, it also contained civil penalties for a class action based on aggregate harm caused by violations. *Id.* at 22. Under these circumstances the Court found that an argument could be made for a course of conduct or as individual wrongs permitting punishment for each infraction. *Id.* Stating "[b]ut the history of this legislation and the inexplicitness of its language weigh against the Government's construction of a statute that cannot be said to be decisively clear on its face one way or the other." *Id. at* 224 Because an argument can be made either way the Court concluded that it was bound under the rule of lenity to uphold the district court's decision. *Id.*[5]

Like the Fair Labor Standard Act the computer fraud statute found at 18 U.S.C. § 1030 *et seq* is a broad and complicated statute. The most salient part is that like the Fair Labor Standard Act statute in *Universal C.I.T Credit Corp,* the computer fraud statute § 1030 prescribes punishments based on aggregate conduct. "[L]oss to 1 or more persons during any 1-year period

---

[5] The Court remanded to determination whether multiple acts could be prosecuted as distinct managerial decisions.

10

(and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value". 18 U.S.C. § 1030(4)(A)(i)(I); *see also "*the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals.". 18 U.S.C. § 1030(4)(A)(i)(II); see *also* physical injury to any person under 18 U.S.C. § 1030(4)(A)(i)(III); *see also* damage affecting 10 or more protected computers during any 1-year period 18 U.S.C. § 1030(4)(A)(i)(V).

As the Supreme Court found in *Universal C.I.T.* in clear legislative history, Congress intended to charge each intrusion into a protected computer system as a separate violation this Court should likewise conclude that the alleged unauthorized intrusion into Twitter servers by the defendant constituted a course of conduct offense which the defendant may only be prosecuted for a single count – alleging the intrusions in the aggregate rather than for each alleged individual intrusion.

### B. Counts Four, Six, Eight, and Ten do not represent separate and distinct courses of conduct

"An indictment is not multiplicitous merely because it charges more than one violation of the same statute based on related conduct; instead, a defendant can be convicted of multiple violations of the same statute if the conduct underlying each violation involves a separate and distinct act." *United States v. Chilaca, 909 F.3d 289, 291-92 (9th Cir. 2018)* (internal cites and quotations omitted). Whether the charged violations involve separate and distinct acts is not simply a matter of whether different training materials were used on different dates. Instead, as the Supreme Court explained in *C.I.T.* the test is whether the alleged provision of material

11

support was a different "managerial decision" on each occasion charged, rather than a single "course of conduct." *See Universal C.I.T.*, 344 U.S. at 225 (holding that "a wholly distinct managerial decision that piece workers should be paid less than the statutory requirement in terms of hourly rates involves a different course of conduct, and so would constitute a different offense.") *Id.* (citation omitted). Alternatively, the Supreme Court referred to this as the (impulse test) which treats as one offense all violations that arise from that singleness of thought, purpose, or action, which may be deemed a single impulse. *United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 224, (1952); *see also United States v. Grimes,* 702 F.3d 460, 468 (8th Cir. 2012).

In this case the indictment makes clear that this is a singular managerial decision. In essence the crime was to obtain unauthorized access into Twitter's servers by positing as authorized users, and unlawfully obtaining their passwords. The computer system however in all cases is Twitter's and is clearly a product of a singular managerial decision. All of these elements and allegations are charged in the Count Three conspiracy charge.  Under these unique and specific circumstances, Counts Four, Six, Eight, and Ten are multiplicitous.

### V. Dismissal of Counts Four, Six, Eight, and Ten is Appropriate

This Court may redress multiplicity in an indictment by dismissal of multiplicitous counts, or entry of an order directing the government to elect under which Counts it will proceed, so long as there is no improper amendment to the indictment. *King*, 713 F. Supp. 2d at 1218 (citing United *States v. Aguilar*, 756 F.2d 1418, 1423 (9th Cir. 1985)); *see also United States v. Johnson*, 130 F.3d 1420, 1426 (10th Cir. 1997) ("A decision of whether to require the prosecution to elect between multiplicitous counts before trial is within the discretion of the trial court.").

12

The principal reason for Courts to delay reaching a decision on dismissal is to determine whether the facts demonstrate separate managerial decisions or a singular managerial decision. As explained fully above, in this case there is no reason to delay as the charged conspiracy in Count Three of the Second Superseding Indictment makes it clear that there is only one managerial decision, and not separate decisions to allegedly hack and access protected computers.[6] Dismissal is appropriate here because the Government cannot elect which of Counts Four, Six, Eight, and Ten to proceed under without amending the Indictment.

**WHEREFORE**, for the foregoing reasons, **ASHRAF AL SAFOO**, respectfully requests that this Court grant this motion and dismiss Counts Four, Six, Eight, and Ten of the Second Superseding Indictment as being impermissibly multiplicitous.

Respectfully submitted,

By:     s/ Patrick E. Boyle
        By Attorney Patrick E. Boyle

**LAW OFFICIES OF PATRICK E. BOYLE**
155 North Michigan Avenue, Suite 562
Chicago, Illinois 60601
(312) 565-2888

---

[6] The Defendant has not challenged the allegation that the Defendant provided material support in the form of currency in Count Twelve, because that is different and could constitute a separate managerial decision. The defendant reserves the right to raise a challenge on multiplicity to Count Twelve dependent on the proof offered at trial.

13

## CERTIFICATE OF SERVICE

I, Patrick E. Boyle, an attorney, certify that on January 3, 2013, I electronically filed the foregoing **Motion to Dismiss** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished electronically in accordance with fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5 and the General Order on Electronic Case Filing (ECF).

By:    s/ Patrick E. Boyle
           Patrick E. Boyle

14