**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATE OF AMERICA** | ) ) | No. 18 CR 696-1 |
| vs. | ) ) | Judge John Robert Blakey |
| **ASHRAF AL SAFOO** | ) ) ) | |

**DEFENDANT'S MOTION TO DISMISS COUNTS FIVE, SEVEN, NINE, AND ELEVEN**
**(MATERIAL SUPPORT FOR ISIS) ON THE GROUNDS OF MULTIPLICITY**

NOW COMES the defendant, **ASHRAF AL SAFOO**, by and through his counsel

**PATRICK E. BOYLE**, and moves this Court to dismiss Counts Five, Seven, Nine, and Eleven

of the Second Superseding Indictment returned against him on March 12, 2020. (Doc.161), as

being impermissibly multiplicitous in violation of the Double Jeopardy Clause of the Fifth

Amendment.

**I. Summary of the Argument**

The government alleges that between June 2017, and continuing until October 13, 2018,

the Defendant Mr. Al Safoo was a member of the Khattab Media Group, and that KMF was

"dedicated to the creation and dissemination of pro-ISIS information, including edited video

content and infographics." (R.161 at Count One, Paragraph 6). In addition to the creation and

dissemination of this pro-ISIS information, the alleged plan was to publish the video content on

Twitter utilizing third-party accounts that the conspirators would gain access to using fictitious

email accounts.

1

The government in a twelve-count Second Superseding Indictment charges the above plot as three separate conspiracies - conspiracy to provide material support to ISIS in violation of 18 U.S.C. § 2339B; conspiracy to gain unauthorized access to a protected computer in violation of 18 U.S.C. § 1030(a)(2)(C); and as a conspiracy to defraud the United States 18 U.S.C. § 371. Doc 161. In addition to the three conspiracies, the government charges substantive violations of 18 U.S.C. § § 2339B and 1030(a)(2)(C) for each alleged actual intrusion into a Twitter account. In this motion the defendant moves to dismiss the substantive violations regarding 18 U.S.C § 2339B charged in Counts Five, Seven, Nine, and Eleven as multiplicitous.

As evidenced by the conspiracy charged in Count One[1], Counts Five, Seven, Nine, and Eleven charge a single course of conduct, that is providing services to ISIS, as multiple violations of 18 U.S.C. § 2339B. The defendant argues that conspiracy to provide services to a designated terrorist organization is a continuing offense.  As such, under *United States v. Universal C.I.T. Credit Corp*., 344 U.S. 218, 221 (1952) and its progeny, Mr. Al Safoo may only be charged with multiple provisions of services if the textual context and legislative history of section 2339B establish a clear indication that Congress intended to authorize multiple punishments for providing services to a terrorist organization.

In support of his argument, Mr. Al Safoo contends that the text context, and legislative history of 18 U.S.C. § 2339B is at best ambiguous as to Congress's intended unit of prosecution, and therefore under the "rule of lenity" this Court is obligated to find that Congress did not authorize multiple punishments for each instance of service provided, and accordingly require

---

[1] Mr. Ashraf Al Safoo does not challenge the conspiracy to violate 18 U.S.C § 2339B in Count One as multiplicitous in recognition of the well settled rule that "conspiracy is a crime that is separate and distinct from the substantive offense that is the object of the conspiracy." *United States v. Rosa*, 17 F.3d 1531, 1543 (2d Cir. 1994); *see also United States v. Feola*, 420 U.S. 671, 693, 95 S. Ct. 1255, 43 L. Ed. 2d 541 (1975) ("[C]onsecutive sentences may be imposed for the conspiracy and for the underlying crime.").

the government to either dismiss Counts Five, Seven, Nine, and Eleven or elect a single count on which to proceed.

## II. Jurisdiction

Federal Rule of Criminal Procedure 12(b)(3)(B)(ii) provides that a motion involving a defect in the Indictment, including charging the same offense in more than one count (multiplicity), "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B)(ii). This motion is filed in compliance with this Court's scheduling order, which satisfies the timeliness requirement of Fed. R. Crim. P. 12(c). In deciding the legal questions presented by Mr. Al Safoo's multiplicity motion, this Court may make necessary preliminary findings of fact so long as the Court does not "invade the province of the ultimate finder of fact." *United States v. Nukida,* 8 F.3d 665, 669 (9th Cir. 1993).

## III. Counts One, and Five, Seven, Nine, and Eleven

Counts Five, Seven, Nine, and Eleven, charge the Defendant with one count of conspiracy to provide services to ISIS and four counts of providing services in violations of 18 U.S.C. § 2339B(a)(1) for attempted provision of material support in the form of services to ISIS, as follows:

- Count One alleges that "between June 2017 and continuing until at least on or about October 13, 2018… Mr. Al Safoo together with others known and unknown, knowingly conspired provide material support, and resources, namely, services to ISIS…".[2]

---

[2] Paragraphs 1-11 allege the background for the conspiracy and are incorporated into Counts Five, Seven, Nine, and Eleven.

- Count Five alleges that "between September 16, 2018 and September 17, 2018… Mr. Al Safoo provided material support and resources, namely, services through Twitter Account A to ISIS…".

- Count Seven alleges that "between September 17, 2018 and September 19, 2018… Mr. Al Safoo provided material support and resources, namely, services through Twitter Account B to ISIS…".

- Count Nine alleges that "between September 20, 2018 and September 25, 2018… Mr. Al Safoo provided material support and resources, namely, services through Twitter Account C to ISIS…".

- Count Eleven to eleven alleges that ""between September 25, 2018 and October 7, 2018… Mr. Al Safoo provided material support and resources, namely, services through Twitter Account D to ISIS…".

### IV. Argument

**A. Single Statute/Multiple Act Multiplicity**

The potential for multiplicitous charges arises when the government charges an uninterrupted course of criminal conduct either as a violation of multiple statutes or as multiple violations of the same statute. "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether these are two offenses or only one is whether each provision requires proof of fact which the other does not." *Blockburger v. United States*, 52 S. Ct. 180, 304 (1932); *see also Illinois v. Vitale*, 100 S. Ct. 2260, 2265 (1980) (reaffirming the *Blockburger test.)*

The *Blockburger* test is generally applicable when the same act or transaction constitutes a violation of two distinct statutory provisions but *is inapplicable when the same act constitutes*

4

*a violation of only one statutory provision*. *United States v. Woods*, 568 F.2d 509, 513 n.1 (6th Cir. 1978). "Our court has held that the same facts test in *Blockburger* is inapplicable to offenses charging a course of conduct, at least where Congress has not indicated the appropriate unit of prosecution." *Id* 513 n.1 (internal quotation omitted). Where the same act or transaction is alleged to have resulted in multiple violations of the same statutory provision, the test is "[w]hat Congress has made the allowable unit of prosecution.'" *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221 (1952)); *see also United States v. Consol. Coal Co.*, 424 F. Supp. 577, 587 (S.D. Ohio 1976) (*quoting C.I.T. Credit Corporation*.) "[W]hen an Act of Congress is ambiguous as to the allowable unit of prosecution, doubts are resolved in favor of lenity for the accused." *United States v. Jones*, 533 F.2d 1387, 1392 (6th Cir. 1976) citing *Bell v. United States*, 349 U.S. 81, 83, 99 L. Ed. 905, 75 S. Ct. 620 (1955).

In the Seventh Circuit the test for multiplicity is whether each count requires proof of a fact which the other does not. *United States v. Conley*, 291 F.3d 464, 470 (7th Cir. 2002); *United States v. Marquardt*, 786 F.2d 771, 778 (7th Cir. 1986). "If one element is required to prove the offense in one count which is not required to prove the offense in the second count, there is no multiplicity." *Conley*, 291 F.3d at 470. To determine whether a particular indictment contains multiplicitous counts, the essential question is the appropriate unit of prosecution under the statute in question – the minimum amount of activity for which criminal liability attaches. *Allender*, 62 F.3d at 912 (citing *United States v. Song*, 934 F.2d 105, 108 (7th Cir. 1991).

For the Seventh Circuit in determining the appropriate unit of prosecution, the court must first look to the language of the statute itself. Song, 934 F.2d at 108 (citing *United States v. Podell*, 869 F.2d 328, 330 (7th Cir. 1989). If the statute unambiguously reflects legislative intent, the inquiry ends. Podell, 869 F.2d at 331. If the statutory language is ambiguous, the next step

5

is to examine the statute's legislative history. Song, 934 F.2d at 108 (citing *United States v. Kimberlin,* 781 F.2d 1247, 1253 (7th Cir. 1985). If the legislative history does not resolve the question, then the court "must apply the rule of lenity, a rule of statutory construction which dictates that in cases of ambiguity or doubt as to congressional intent, only one offense may be charged." Song, 934 F.2d at 108 (citing *Bell v. United* States, 349 U.S. 81, 83 (1955).

This Seventh Circuit approach is the same in the Ninth and Eighth Circuits. The Ninth Circuit held in *Brown v. United States,* 623 F.2d 54, 57 (9th Cir. 1980), that in determining what Congress has deemed the 'unit of prosecution' courts are limited to materials that directly inform congressional intent. *Id.* at 57. There the Ninth Circuit explained, "[u]nless [the Court] can find from the face of the Act or from its legislative history a clear indication that Congress intended to authorize multiple punishments for a single transaction, we are obliged to construe the Act against the harsher penalties that result from cumulative punishments. *Id*. at 57 quoting *United States v. Clements*, 471 F.2d 1253, 1254 (9th Cir. 1972). [3] Similarly in *United States v. Chipps*, 410 F.3d 438 (8th Cir. 2005), the Eighth Circuit described the test for single statute/multiple act multiplicity as whether Congress sought to punish separately individual acts, as looking to the "statutory language, legislative history, and statutory scheme to ascertain what Congress intended the unit of prosecution to be." *Id.* at 448. (internal cites omitted). Noting that "when Congress fails to establish the unit of prosecution 'clearly and without ambiguity,' we resolve doubt as to congressional intent in favor of lenity for the defendant." *Id.* citing *Bell v. United States*.

---

[3] Judge Henderson's summation of the rules of statutory analysis governing an inquiry into the unit of prosecution authorized by a criminal statute is cited as persuasive authority. Counsel submits, however, that Judge Henderson's analysis is supported by the well-established case law of the Ninth Circuit.

6

1. *The Plain Language of 18 U.S.C. §2339B Does Not Clearly Prescribe Individual Acts of Service Unit of Prosecution*

The text of 18 U.S.C. § 2339B does not demonstrate a clear indication by Congress that it intended to authorize multiple punishments for individual acts of service as the unit of prosecution. The text of §2339B(a)(1) describes the unlawful conduct as:

> Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 20 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life.

The most natural reading of §2339B(a)(1) is a course of conduct. The plain language meaning of support is "the act or process of supporting." [4] The process of supporting is assistance which is a course of conduct that can occur on a singular occasion or over a long period of time. The plain language meaning of resources is "a source of supply or support: an available means —usually used in plural."[5] Again the plain language of meaning resources describes a course of conduct that could occur on one occasion, or occur over a long period of time. Because the rule of lenity informs the analysis, this Court, however, need not go so far as to find that the text of §2339B(a)(1) unambiguously criminalizes a course of conduct. Applying the rule of lenity, in order to prevent judicial expansion of criminal liability, there must be a clear indication that Congress intended to authorize multiple punishments for providing separate acts of material support to a terrorist organization. There is no mention of a unit of prosecution in §2339B(a)(1), let alone a clear indication the proper unit of prosecution is each individual instance of services provided.

---

[4] Support, Merriam-Webster.com, *https://www.merriam-webster.com/dictionary/support (July, 1 2022).*
[5] Resource, Merriam-Webster.com, *https://www.merriam-webster.com/dictionary/resource (July, 1 2022).*

7

Nor does the descriptions of material support provided in §2339B(g)(4) and (h) clearly indicate that each instance of material support can be a unit of prosecution. Section 2339B(g)(4) describes the term "material support or resources" as having "the same meaning given that term in section 2339A (including the definitions of "training" and "expert advice or assistance" in that section)." Section 2339A(b)(1) defines material support or resources as:

> *any* property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safe houses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials. (emphasis added).

Arguably, the definition of material support creates a series of offenses each of which can be separately charged as a unit of prosecution during the course of providing material support. However, it can also be argued that the modifier "any" preceding the list results in the list merely defining the breadth of what may constitute material support. The rule of lenity tips the argument in favor of finding that section 2339B authorizes a single punishment for acts of material support.

The Supreme Court has held on more than one occasion that the modifier "any" is ambiguous. In *Bell v. United States*, 349 U.S. 81 (1955), the Supreme Court held that the Mann Act's prohibition against transportation of "any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose" could be reasonably read to provide a unit of prosecution based on the number of transports or the number of women, and "the ambiguity should be resolved in favor of lenity." *Id.* at 82-83. Accordingly, a defendant could not be convicted on two separate counts for making a single trip with two women. *Id.* at 83. Similarly, in *Ladner v. United States*, 358 U.S. 169 (1958), the Supreme Court applied the rule of lenity to a statute that criminalizes interference with "any person" engaged in official federal duties. *Id.* at

8

170 (internal cites omitted). In holding that statute did not unambiguously create separate units of prosecution for each person affected, the Court stated "[i]f Congress desires to create multiple offenses from a single act affecting more than one federal officer … Congress can make that meaning clear." *Id.* at 178.

The Tenth Circuit in *United States v. Elliott*, 937 F.3d 1310 (10th Cir. 2019) applied the Supreme Court's holding in *Bell* and *Ladner* to 18 U.S.C §2252A(a)(5)(B). Section 2252A(a)(5)(B) prohibits the knowing possession of child pornography and is similarly structured to section 2339B.[6] At issue in *Elliott* was whether section 2252A(a)(5)(B)'s language prohibiting multiple forms of possession permitted prosecution for possession of child pornography on four different storage devices. *Id.* at 1312. The Tenth Circuit concluded that it did not, holding that the statute of conviction contains the ambiguous modifier "any" preceding the enumerated list of storage materials. In reaching this conclusion, the Tenth Circuit relied on the Supreme Court's findings in *Bell* and *Ladner,* and its own prior determinations that the modifier "any" creates sufficient ambiguity and under the rule of lenity *Elliot* could only be charges once for possession no matter how many different devices the child pornography was possessed on. The similar use of the modifier "any" in the definition of material support results in the same conclusion here. That is, the unit of prosecution is at best ambiguous and accordingly section 2339B provides for a singular punishment for material to a terrorist organization.

---

[6] Section 2252A(a)(5)(B) prohibits in relevant part [a]ny person who . . . knowingly possesses . . . *any* book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography" shall be subject to the criminal penalties. 18 U.S.C §2252A(a)(5)(B). When §2339A definition of material support is inserted into §2339B; it reads "Whoever knowingly provides *any* property, tangible or intangible, or service, including… training, expert advice or assistance…personnel (1 or more individuals who may be or include oneself)….to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title.

9

2.   *The Context of "Service" in 18 U.S.C.§ 2339B is Consistent with a Course of Conduct as the Unit of Prosecution*

The context of "services" within section 2339B further indicates that providing services in the form of training constitutes a singular course of conduct. The broad prohibition against training and expert services in §2339B was the subject of the Supreme Court's ruling in *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010). In *Humanitarian Law Project*, the respondents sought to teach a designated Foreign Terrorist Organization peaceful dispute resolution, and argued in part, that section 2339B prescriptions against providing services in the form of training and expert services violated their First Amendment Rights to speech and association. Alternatively, the respondents argued that the broad potential sweep of the prescriptions against services violated the void for vagueness doctrine. The Supreme Court rejected those arguments holding that providing services in the form of training was constitutional because the prescription was limited to training performed "in coordination with, or at the direction of, a foreign terrorist organization." *Id.* at 24.

In reaching this conclusion, Chief Justice Roberts, observed that if independent activity in support of a terrorist group was characterized as a "service," the statute's specific exclusion of independent activity in the definition of "personnel" would not make sense. Congress would not have prohibited under "service" what it specifically exempted from prohibition under "personnel." *Id.*[7]

This observation is equally true concerning the unit of prosecution. The definition of providing personnel makes clear that the offense is continuous in nature. That is the offense

---

[7] 18 U.S.C. § 2339B(h) defines personnel in relevant part as "provid(ing) a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation to of that organization."

10

continues for the duration the work performed and is not dependent on the number of people provided or the length of time they worked. It similarly makes no sense that Congress would intend to punish service in securing Twitter accounts and publishing ISIS materials for each occurrence rather than the course of conduct provided under direction and control. Such an interpretation would make providing the same service on several different occurrences subject to greater punishment than working or supervising a terrorist organization continuously for years.

*3. The Legislative History of 18 U.S.C. §§ 2339A and 2339B is Silent as to The Unit of Prosecution*

The legislative histories of 18 U.S.C. § § 2339A and 2339B focus on the need for prohibiting material support, clarifying the definition of what may constitute material support and providing increasing levels of punishment. Section 2339A was initially enacted as part of the Violent Crime Control and Law Enforcement Act of 1994. Thereafter congress amended §2339A and supplemented it with §2339B. The legislative history of the statutes states an intent by Congress to deny terrorist organizations support of any kind.

> "Allowing an individual to supply funds, goods, or services to an organization, or to any of its subgroups, that draw significant funding from the main organization's treasury, helps defray the costs to the terrorist organization of running the ostensibly legitimate activities. This in turn frees an equal sum that can then be spent on terrorist activities" H.Rept. 104-383, 81 (1995).

In 2001, the USA PATRIOT Act amended both sections in relevant part by increasing the maximum term of imprisonment from 10 to 15 years and adding "expert advice or assistance" to forms of prescribed material support or resources. Congress passed the USA PATRIOT Act with little debate and no relevant legislative history.

The Intelligence Reform and Terrorism Prevention Act of 2004 amended the definition of "material support or resources" that applies to both sections. Clarifying definitions of the

11

examples "training" and "expert advice or assistance" were added, as was a clarifying explanation of the term "personnel" as used in section 2339B. P.L. 108-458, §6603, 118 Stat. 3762 (2004). In 2015, Congress increased the maximum penalty for violations of section 2339B from imprisonment for not more than 15 years to imprisonment for not more than 20 years. P.L. 114-23, tit. VI, §704, 129 Stat. 300 (2015).

In short, the legislative history is concerned with what constitutes material support and the appropriate maximum punishment, but it is silent as to the unit of prosecution. Again, applying the rule of lenity results in the unit of prosecution being a course of conduct of providing material support to a terrorist organization, rather than authorizing punishment for each individual act of support.

For the reasons set forth above, the Defendant, Mr. Al Safoo, respectfully submits that this Court should find Congress has not clearly specified in the text, context, and legislative history of 18 U.S.C. § 2339B that individual acts of service are an authorized unit of prosecution. Accordingly, the Government may only charge material support in the form of services as separate violations if the alleged services between September 16, 2018 and October 7, 2018, constituted separate and distinct courses of conduct.

### B. Counts Five, Seven, Nine, and Eleven do not represent separate and distinct courses of conduct

"An indictment is not multiplicitous merely because it charges more than one violation of the same statute based on related conduct; instead, a defendant can be convicted of multiple violations of the same statute if the conduct underlying each violation involves a separate and distinct act." *United States v. Chilaca, 909 F.3d 289, 291-92 (9th Cir. 2018)* (internal cites and quotations omitted). Whether the charged violations involve separate and distinct acts is not simply a matter of whether different training materials were used on different dates. Instead, as

the Supreme Court explained in *Universal C.I.T.* the test is whether the alleged provision of material support was a different "managerial decision" on each occasion charged, rather than a single "course of conduct." *See Universal  C.I.T.*, 344 U.S. at 225 (holding that "a wholly distinct managerial decision that piece workers should be paid less than the statutory requirement in terms of hourly rates involves a different course of conduct, and so would constitute a different offense.") *Id.* (citation omitted). Alternatively, the Supreme Court referred to this as the (impulse test) which treats as one offense all violations that arise from that singleness of thought, purpose, or action, which may be deemed a single impulse. *United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 224, (1952); see *also United States v. Grimes,* 702 F.3d 460, 468 (8th Cir. 2012).

The Supreme Court found in *Humanitarian Law* that services in conjunction with section 2339B had its plain language meaning, "the performance of work commanded or paid for by another: a servant's duty: attendance on a superior"; or "an act done for the benefit or at the command of another"). *Humanitarian Law Project*, 561 U.S at 23-24, (internal cites omitted). In this case, the work is training and providing training materials. The indictment alleges that the services were provided on five occasions between September 16, 2018 and October 7, 2018. The nature of the managerial decision during this period does not change. The singular managerial decision alleged was to provide services in the form of obtaining Twitter accounts and publishing ISIS materials to a terrorist organization. The managerial decision presumptively begins on or about June 2017 and continued through October 13, 2018 – the dates of the charged conspiracy which encompasses all of the acts of service. On the face of the indictment alleging a single conspiracy, the government necessarily alleges a single managerial decision to embark on a course of criminal conduct to provide the above services.

13

Accordingly, like personnel, which continues as a singular course of conduct after the managerial decision to provide oneself or another, services continue from its onset until completed. Finding otherwise would be contrary to the Supreme Court's holding that services and personnel are closely related concepts subject to the same limitations.

### V. Dismissal of Counts Five, Seven, Nine, and Eleven is Appropriate

This Court may redress multiplicity in an indictment by dismissal of multiplicitous counts, or entry of an order directing the government to elect under which Counts it will proceed, so long as there is no improper amendment to the indictment. *King*, 713 F. Supp. 2d at 1218 (citing United *States v. Aguilar*, 756 F.2d 1418, 1423 (9th Cir. 1985)); *see also United States v. Johnson*, 130 F.3d 1420, 1426 (10th Cir. 1997) ("A decision of whether to require the prosecution to elect between multiplicitous counts before trial is within the discretion of the trial court.").

The principal reason for courts to delay reaching a decision on dismissal is to determine whether the facts demonstrate separate managerial decisions or a singular managerial decision. As explained fully above, in this case there is no reason to delay because the conspiracy charge in Count One makes clear that there is only one managerial decision, and not separate decisions to provide different forms of services.[8] Dismissal is appropriate here because the Government cannot elect which Counts Five, Seven, Nine, and Eleven to proceed under without amending the indictment.

---

[8] The Defendant has not challenged the allegation that the Defendant provided material support in the form of currency in Count Twelve, because that is different and could constitute a separate managerial decision. The defendant reserves the right to raise a challenge on multiplicity to Count Twelve dependent on the proof offered at trial.

WHEREFORE, for the foregoing reasons, **ASHRAF AL SAFOO**, respectfully requests that this Court grant this motion and dismiss Counts Five, Seven, Nine, and Eleven of the Second Superseding Indictments as being impermissibly multiplicitous.

Respectfully submitted,

By:  s/ Patrick E. Boyle
By Attorney Patrick E. Boyle

**LAW OFFICES OF PATRICK E. BOYLE**
155 North Michigan Avenue, Suite 562
Chicago, Illinois 60601
(312) 565-2888

**<u>CERTIFICATE OF SERVICE</u>**

I, Patrick e. Boyle, certify that on January 3, 2023, I electronically filed the foregoing **Motion to Dismiss** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished electronically in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5 and the General Order on Electronic Case Filing (ECF).

By:     <u>s/ Patrick E. Boyle</u>
          PATRICK E. BOYLE

16